Judge Mills
delivered the Opinion of the Court.
[Absent Chief Justice Bibb.]
On a bond with security given by the plaintiffs, to secure a sum recovered for improvements, after judgment of eviction under the accupying claimant laws, in the county of Pendleton, the defendant in error issued his execution to the county of Grant, and there sold the lands of the plaintiffs in error, in satisfaction of the demand and became himself the purchaser.
The plaintiffs moved the court below to quash the executions and set aside this sale, relying on the grounds—
1st. That the execution Issued on a bond, having the force of a judgment, under the occupying claimant laws, and that the laws were unconstitutional, and all proceedings under them void.
2ndly. That the sale was irregularly executed by the sheriff.
Question of the validity of the occupant laws is not now open in this court for discussion: it is settled.
Erroneous acts of the sheriff, over which the plaintiff had no direct control, and which he did not induce. shall not affect his purchase more than in a stranger’s case.
If none of the defendants reside in the county where the judgment is rendered, the execution may go to any county where either of the debtors have lands or goods.
3dly. The execution was improperly issued from the county of Pendleton to Grant—because the execution could only go to Pendleton; or if it was sent-out of Pendleton, it could only goto Scott county, where the defendants in the execution or some of them, had large estates, consisting of chattels and slaves. The court below overruled the motion, and this writ of error is prosecuted.
As to the point whether the occupying claimant laws, or the proceedings under them, be or he not constitutional, this proceding appears to have been had under the act of 1812; and it has been so repeatedly settled by the decisions of this court, in some cases tacitly enforcing the provisions of the act, and in others expressly adjudicating upon the point, the question may be considered at rest, and no longer open to discussion, that this act is constitutional until some tribunal capable of com ruling has courts shall by its mandate set it again at large.
On the second point, it. is insisted on one side. that the irregularities of the sheriff, in making the sale, cannot vitiate it, as the sheriff is responsible for his illegal conduct, and the sale must stand. On the other side, it is contended that this doctrine only applies to cases where strangers purchase, and that the law is different where the purchase is made, by the plaintiff in the execution, and that he is bound by all the errors of the sheriff.
That purchasers generally are not affected by the erroneous or irregular proceedings of the officer making the sale, is, long since, well settled; and we conceive that the same principle applies to plaintiffs in executions, as to every erroneous act of the sheriff over which they have no direct control, and which they have not been instrumental in producing.
The acts of the plaintiff in the execution, are here relied on as affecting the sale, and if by his own acts, he had violated the law in conducting his execution, we should have no hesitation, for that reason, to affect his title as a purchaser, although a *466 stranger, if he had purchased, would have an unimpeachable title.
Query: shall plaintiff send his execution to the county where a defendant has goods, or may it go to another county where there are lands only? —unless it appears plaintiffs had knowledge of the goods, the not arise against his purchase of the land.
The first act complained of. is, the emanation of the execution from the county of Pendleton, to the county of Grant, where the defendants did not reside. It is not pretended that the defendants in the "execution, resided in Pendleton; for their notice alleges that they are residents of Scott, and the proof shews that part of them and their surety reside iu gcott, and is silent as. to the residence of the rest ot them, but there is no grounds for presuming contrary to their own assertions, that they reside in Pendleton, where the judgment was. As they do not reside in Pendleton, the act or assembly permiting executions to go out of the county settles the question, 1 Dig. L. K. 484. It provides that where the defendant shall "remove himself or his effects, or shall reside out of the jurisdiction of the court where judgment was given,” the clerk shall sat the request of the party, for whom the judgment was rendered, issue any writ, of fierifacias, or other legal and judicial writ, and direct the same to the, sheriff of any county within this state, where defendant, or debtor, his goods or lands, may be found.” Now as the defendants did not reside in Pendleton, and their Hands” were found in Grant, it was within the letter of the act that the execution might go there.
But it is insisted that, although lands were found in Grant, personal estate and slaves, existed in Scott, and that the plaintiff in the execution, was bound to send the execution where these commadities could be first sold, as the law has postponed the lands of his debtor to other articles. Whether in making his election, as to the county, to which the execution should be sent, the plaintiff was restricted to that where the personal estate lay, we need not enquire. For we are satisfied he could not be bound to send the execution to scared out the personal estate, unless he knew where it was; and there is a failure in the proof, to shew that the plaintiff were possessed that, knowledge. It is shown that the estates of the defendants who resided in Scott were ample, as well as that of their surety, and that the *467 surety bad been a man in public life, well known in the country; but there is no proof which brings the knowledge of either his residence or estate home the plaintiff in the execution.
Advertisement of sheriff's sale of land on the 9th, a court day, to sell on the 19th, is ten days within the statute, and sufficient- one day, that of posting up the notice, or that of making the sale, but not both, are excluded
Twenty days notice of the sale of chatels, but ten only in case of lands. Land must be advertised on court day.
The next enquiry is into the acts of the sheriff. Here it seems the seizure was on the 7th of June, 1823; the county court of Grant came on the 9th, and the sale was executed on the 19th of the same month, and if we presume that the sheriff gave notice on the 9th being his court day, (which we are bound to presume in favor of the, acts of the officer) there was a period of ten days, between the notice ami the sale; counting one of the days inclusive, and the other exclusive, which is the well known rule in computing any given number of days; and the act of assembly, regulating the sale of lands, 1 Dig. L. K. 515, expressly directs the sale to he made in not less than ten nor more than twenty days, after the notice on the court day. The sheriff therefore, cannot be convicted of too great haste between the notice and sale; and if the sheriff has committed no error, the plaintiff in the execution cannot he charged with any, even if it be conceded that lie would bo accountable for such errors of the sheriff, which is very problematical, although he be a purchaser, unless he was somehow instrumental in procuring the commission of such errors or irregularities.
But it is insisted that there was not sufficient time given between the seizure and sale, the first being on the 7th and the latter on the 19th of the month. And it is insisted that as the law gives twenty days between the seizure and sale of of goods and chattels 1 Dig. L. K. 486; the same time ought to be given in the case of lands. To this we reply that this law speaks expressly of goods and chattels, excluding lands, and that the laws directing the sales of lands, contain no such provision, and ought to be construed as a system sui generis, as far as can conveniently be done, consistent with the provisions of other laws regulating sales by execution. We therefore perceive no irregularities or improprieties in this sale for which it ought to he set aside, and the judgment on the court below overruling the. motion must be affirmed without, costs.